Our second case for this morning is Eric Mains v. Citibank and others, 16-1985. Mr. Schulte. You may begin. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. My name is John Schulte and I represent the appellant in this matter, Mr. Eric Mains. May I reserve five minutes of rebuttal time? Yes, you may. Your Honors. You have to watch the lights, though. Oh, no problem. The white light will turn on when your five minutes starts. Thank you, Your Honor. We are here today on an appeal from an order granting a motion to dismiss filed by the defendants. That order was based on the application of the Rooker-Feldman Doctrine, which we believe does not apply in this case. So let me ask you, before we get too deeply into the weeds of Rooker-Feldman, in light of many cases from this Court, it's a mystery to me why, if you thought that the state court judgment was tainted by fraudulent evidence or other problems with the evidence presented to the state court, you didn't avail yourself of Indiana's court procedures to go back to the state court and tell it. The state courts have, actually in Indiana, the equivalent of our Rule 60, and they're quite capable of addressing that kind of problem. Normally, the federal courts are not in business of overseeing how the state courts function. Your Honor, that's a great question. We believe that we very well may have been able to do that. However, without getting too caught into the rabbit holes of the factual issues with, in our opinion, effective TILA rescissions, we believe this was the proper forum for this action because the fraud that we're alleging in this complaint, we did not know about at all. Well, that's regularly the case. I mean, if we had a normal case in federal court, federal district court, and then somebody discovers some time later, let's make it an easy case, you know, within a year, you can file a Rule 60 motion. Rule 60B motion is what it would be in the federal court. And kind of the premises, you didn't know it before. And, of course, my next point is going to be, given that this remedy is available in the state court and given the comedy underpinnings of Rooker-Feldman, you need to convince us that this wasn't what was required of you. Now, there is actually an issue about dismissing something on Rooker-Feldman with prejudice since it's a jurisdictional dismissal, but I'll save that for another point. Well, Your Honor, I guess then I need to answer directly that we believe the mortgage and note no longer exist under Mr. Maine's effective rescission. But wait a second. He owes the money. He's living in the house. He owes the money, right? Well, Your Honor. He's going to live in the house and he gets to keep the house and he never has to pay back the mortgage? What sense does that make? Your Honor, that's a great question. Mr. Maine's never had an issue paying. He actually went through settlement conferences. What we're alleging here is that the documentation... Well, has he paid the mortgage? Has he paid it recently? Recently. Has he paid off the mortgage? He has not paid off the mortgage. So he's living there. He owes money. He's never going to pay it. Well, Your Honor, I would actually respond to that with your quote from the Pushpin Holdings case, which states, the Rooker-Feldman rule does not bar a federal suit that seeks damages for fraud that resulted in a judgment. Look, I'm not talking about Rooker-Feldman. I don't understand how he can get away with living in a house where he owes mortgage and he won't pay the mortgage. He just wants to live there without any financial obligation to the lender. We do not disagree with that. He was going through the housing affordable. What do you mean you don't disagree? When is he going to pay? He just attempted to go through the loan modification process. But, again, we believe those are all genuine issues of material fact. No, they're not. I mean, the timing is indisputable. And by the time he sends the rescission letter, the state court is finished. There's been a foreclosure. The judgment of the state court, if you will, substitutes for what would have been the mortgage before that because then once there's a foreclosure, there's just a judgment. There's obviously a process. I'm sure you're very familiar with it where there's a sale normally of a place. But the state court judgment is what stands in place of the mortgage. So it's not that you all of a sudden have a home-free ticket and you don't owe the money anymore. You just owe under a state court judgment. And if you don't pay, oftentimes there's a redemption period and so on, so there's usually an opportunity to pay. Then you go. So the chase lawyer writes back and says, You can't rescind anymore. And, actually, I don't see any evidence that he has in any way taken the rest of the steps that would be necessary for rescission. You can't just say, Well, I'm tired of this mortgage. I'm done with it. And send a letter to your lender. That's just not the way it works. We believe the United States Supreme Court in the Jesenowski ruling said rescission is effective upon mailing and it is deemed incumbent on the other party to file an action in court. They did not do that. They sat on their rights. But he doesn't unwind all of the things that had happened up until that point. That's the problem with his rescission. What I'm failing to see in your case, and maybe you can help me. I mean, there are all these theories and everything. It's kind of hard to follow. But give me your strongest case for a claim that you're bringing that does not require us to accept the validity of what the state court did. The strongest claim is the judgment procured against us was established by fraud. That's not a strong claim. If that's all you have, then you are barred by Rooker-Feldman. What about the Fair Debt Collection Practices Act? What's your claim there? Again, we have their known Cynthia Riley, who was their Washington Mutual vice president, admitting she was not an employee of either Washington Mutual or Chase Bank, and she was the one whose signature was affixed to Mr. Main's name. Right, so this is a robo-signing case. So are you saying, and this is actually just a friendly clarifying question, are you saying, yes, we owe whatever comes from the state foreclosure judgment, but we have, in essence, a process claim under the Fair Debt Collection Practices Act, which has some statutory damages you can get. Certainly it doesn't get you to keep your house. It doesn't in any way change the ultimate result. But are you bringing that more modest claim under the FDCPA, or are you just using it as another avenue to undo the state court judgment? We are not attempting to undo the state court judgment. So you will admit that the house has been foreclosed on. You admit that there's going to be a sheriff sale. Five fraudulent meetings. That doesn't matter. But I'm just admitting it. You have to talk to the Indiana courts about that. You admit that there is a state court judgment and that it would be possible tomorrow for there to be a sheriff sale and that your claims are independent enough from all of that. So I want to understand how that can be. It can be that way because of the precedent set in this circuit, as I cited the Johnson v. Pushpin holdings, as well as the Patel-Iqbal v. Patel case, and that case, which came out in your old circuit in March of 2015. The Pushpin goes nearly that far. There are some things that are distinct from the final judgment, but you have to just start with the proposition that the final judgment is something that's the business of the state courts to sort out if there's a problem with it. If that were the case, then I think the Pushpin holding might create an independent action, a separate action that would allow Mr. Maine's recourse. Well, like Iqbal says, action that predates the state litigation and causes injury independently of it. So that's why I was saying if you're using the wrong procedures, if you're sending letters that don't comply with the Fair Debt Collection Practices Act or you have put the wrong interest rate in your TILA disclosures, there are some things that I can imagine might be separate from the foreclosure judgment, but I'm having trouble distilling from your brief what you think they are. You keep going back to the fraud that led to the state court judgment, and that, I think, is a tough line to go down. And I appreciate that position, Justice. Judge. We believe that whether or not the state court judgment went in his favor or didn't, there would have still been an independent cause of action that would have predated all of this. Those are factual issues. What would you have been saying in that independent claim? Exactly what we've been alleging here. Well, that's the problem, I think. What is the fraud exactly? Now I've lost the thread. The fraud is that the known robo-signer, and I'm sure you all are aware of the consent judgment we referenced with LPS Blackknight that was signed by numerous attorney generals, including the state of Indiana, and LPS Blackknight, who contracted with Nelson and Frankenberger, this Indianapolis law firm that moved forward the foreclosure action, they are known, LPS Blackknight is the one who signed the consent judgment, to rectify these wrongs. Well, I don't understand you. Your client owes the money, right? The mortgage? So what's the fraud? It goes back to law school of actually proving clean chain of title. We're not arguing about... I don't understand.  He owes money on it. He won't pay the money. Well, what's the fraud? The fraud is that... Do you think he has a right to live there without ever paying off the mortgage? No, and neither does he. He attempted to go through the process. Well, wait a minute. Attempted? Did he write a check to someone? No, in the... He wanted it renegotiated, and that fell apart, right? That's right. In the efforts to renegotiate. And so he just drops it at that point, as far as I can tell. This litigation substitutes. He did not want to make payments to somebody he didn't know was the proper holder. Why does he care? He owes the money. Who does he... What's it to him? Who gets the money? Because he wants to make sure he doesn't pay the wrong person, the wrong party. He's worried that he might be sued by the right person? That is correct. Down the line. And be exposed to multiple liabilities. And the right person would be who? Citibank or Washington Mutual or what? That is the entire point of our case. We believe to this day it hasn't been proven. However, facts have come to light to us that we believe are reserved here for the Southern District of Indiana's trial court, district court, to figure out. We're here on a motion to dismiss and assuming a lot of facts that aren't in evidence. I think we might be wrong, but it's not to be determined yet. It will be determined, in my opinion, properly on a motion for summary judgment at the Southern District of Indiana. All right. Well, if you want to save that rebuttal time, now would be prudent. Thank you, Your Honor. Mr. Weiss, are you the first one? All right. Mr. Goldberg. Good morning, Your Honors. May it please the Court. So maybe I'll start with you, Mr. Goldberg. Sure. There's at least one error in the district court's judgment, and that's the fact that all of these claims, if you look at the judgment, she lists as dismissed with prejudice. Because Rooker-Feldman is a jurisdictional doctrine, and there's nothing in Rooker-Feldman that says anything more than the federal courts are the wrong place to be pursuing this action. And as long as people leave the federal courts alone, they're free to explore what the state courts might be able to do. So normally, of course, if it were 12 v. 6, or if it were a judgment after a trial, with prejudice would mean you're done, and you can't take this to the state courts, and you can't take this and bother anybody else with it. But this should not have been, insofar it was a Rooker-Feldman resolution, with prejudice. Your Honor, I've seen courts within other circuits dismiss federal claims with prejudice under Rooker-Feldman, leaving intact state causes of action. They may not be right. I will concede under this court's Taylor opinion that the dismissal should have been without prejudice. Okay. So insofar as it's Rooker-Feldman. So I'm also concerned that some of the theories might actually be theories that should have been analyzed the next step down the line, under 12 v. 6. And I know you have at least asserted, if I remember correctly, that these arguments were preserved in the district court. Because, you know, to take, for example, the ones I was talking about, fair debt collection practices and TILA, not the theories that I've heard so far from Mr. Schulte, but there are some process theories where you could say, you know, yes, at the end of the day, you know, I have to leave the judgment alone, but I suffered an independent harm through the methodologies that they were using to collect the debt, or through the kinds of disclosures that were made under TILA. And there are, in some instances, statutory damages for that, which are pretty modest. Why are they not things that predate the foreclosure judgment and that are not within the scope of Rooker-Feldman? Your Honor, there are roughly three events that predate the judgment, that predate the state court litigation, that are addressed in the amended complaint. The first is the assignment of the mortgage, which is alleged to be robo-signed. The second is the tendering of notices of acceleration. And the third is the endorsement of the note by Cynthia Riley. Candidly, Mr. Maines does not explain anywhere in his briefing or in his complaint why any of these events give rise to any cause of action based upon damage other than the foreclosure judgment. But at least theoretically, I mean, it's kind of at the 12B6 level. Maybe this is a bit of a stretch, maybe not. But I've been thinking about this, and since the district judge did dismiss with prejudice, if there's an alternative ground that would cause that to be the correct disposition that was not waived or forfeited in the district court, we're certainly entitled to look at that ground. Yes, Your Honor. And so that's what I'm wondering, whether some of those claims, you may be of the view that they're without merit, but the procedural disposition is going to matter for what options remain available in the state court. All right. Let me begin with the FDCPA claim then. Okay. If you look at the amended complaint, paragraphs 185, 187, the FDCPA claim is based upon the contention that the appellees here knew the right to collect the debt was invalid due to the defective and falsified. Knew the what? I can't hear you. I'm sorry. Knew the right to collect the debt was invalid due to the defective and falsified documents, namely the assignment of mortgage. The Bravo sign. Yes. Assignment, yeah. The fact is that the foreclosure judgment expressly states that Citibank had the right to foreclose, was entitled to a foreclosure judgment both in rem and in personam for damages. So why would that not be, just to at least play the devil's advocate here, why wouldn't that be the sort of thing that if you were looking at a 12B6 motion, we've said that sometimes affirmative defenses such as issue preclusion can be entertained at the 12B6 level if the record is absolutely clear and there's really nothing else to be done. So I can hear that as you're saying, well, the state court resolved this issue, so it doesn't need to be litigated, or indeed shouldn't be litigated anymore. Rooker-Feldman and issue and claim preclusion are related, but the key to Rooker-Feldman is that the district court is a completely lax jurisdiction. Well, are you saying there's no basis for his concern that he might be paying the wrong person? Your Honor, the amended complaint is completely devoid of any allegation that there has been any demand by any other party. No, no, that's not the question. Not as whether there has been a demand by another party, but whether there might be. Well, that would be speculative. There is no causation there. There are no actual damages there. So remind me, Citibank is the party that's administering this loan? Which way does it go? Is it Chase who's collecting in its Citibank? Yeah, Citibank is the trustee. Yes, Your Honor. Right, and so Chase is the actual administrator of the loan. The loan servicer, yes. The loan servicer. So if he pays Chase, he's paid the loan servicer, and your position is nobody could raise any claim about that? Your Honor, hypothetically, if there were some other bank out there that believed it held the loan and the mortgage, they could assert a claim, but the fact is that they have not. It would be speculation to even think about that. On kind of a different note, Maine says in his reply that he still has possession of his home and defendants haven't used the foreclosure judgment out of fear of increasing any damage exposure since they were aware it was procured using forgery. I assume you don't agree with that, but I guess my question is why hasn't the foreclosure judgment been enforced? Your Honor, I do not represent Citibank, so I cannot say why they chose not to go forward with the foreclosure judgment. The foreclosure sale was scheduled at one point in time. It was canceled. It can be rescheduled. Which one of this group do you represent then? I represent Black Knight, Your Honor. Black Knight, okay. You represent whom? Black Knight. They're the ones who created the software? Allegedly the software and the robo-signing of the assignment. The robo-signing, okay. Your Honor, I'm trying to reserve some time for Mr. Weiss to discuss the FIREA claim. That's fine. Thank you. Thank you so much. Now it's your turn, Mr. Weiss, and you can tell us who you represent. Your Honor. You represent Ms. Riley, right? Correct. Good morning, Your Honors. May it please the Court, I do represent Cynthia Riley. Represent who? Appellee Cynthia Riley. Okay, I'll speak up. She's the one who was, who were worried about what date did she stop working? That's right. That's right, Your Honor. And Judge Wood, you hit the nail on the head. You heard from Appellant's counsel a moment ago that Ms. Riley admitted, allegedly, that she was not an employee of Washington Mutual Bank at the time the note was endorsed. And that's just completely and utterly unsupported by facts in the record. That's from this Florida deposition. The deposition sounds a little funny, though, doesn't it? It is. And part of the problem, Your Honor, is that Mr. Maines attaches selectively excerpts of that deposition as an exhibit to his amended complaint. He doesn't attach the entirety of the deposition, although the entirety of the deposition is, in fact, in the record, and that's at Docket 68, Exhibit 1. And when you look at the entirety of the deposition, it's abundantly clear that Ms. Riley wasn't laid off from Washington Mutual Bank in November of 2006, as the appellant claims. She was simply the department that she worked in shut down in Jacksonville, Florida. So she wasn't fired from the bank. She was just repositioned to a different function in the bank. But I guess my question about that, I got that far with you, but it looked like, at least their theory is, that that different function to which she was assigned didn't include the kind of things that she was doing in the old job, and so it wouldn't have normally been within the scope of her job to be worrying about this loan. Well, the problem with that theory, and let's take a look at the allegation in the complaint, it's at paragraph 64 of the amended complaint, and I'm quoting, she apparently decided to sneak back in the office for a day sometime after December 20th, 2006, and make sure she personally endorsed Maine's note, even though no longer employed as a bank officer. So the theory is that you're right. She was no longer a bank officer at the time, and no longer therefore had authority to endorse the note, because the note endorsement bears her signature as a vice president of Washington Mutual Bank. So if the linchpin of the argument is, well, she was no longer a vice president as of November of 2006, the note is dated December of 2006, therefore she didn't have authority. Well, let's look at the facts in the record. And again, if you look at the deposition transcript as a whole, she testifies unequivocally that she was a vice president of Washington Mutual Bank continuously from June of 2004 through January of 2008. There's also, excuse me, evidence in the record, a contemporaneously maintained business record, and that's at docket 74, exhibit 8. It's a job profile from Ms. Riley's personnel file. It corroborates her testimony. She was a VP of, excuse me, continuously from June of 2004 until February 1, 2008. So this notion that in November of 2006, she was no longer an officer of the bank, a VP, authorized to endorse the note is completely belied by the facts in the record. And so our position, Your Honors, is that given that, given that all the facts in the record support that the endorsement on Mr. Maine's note by Cynthia Riley in her capacity as vice president happened before WAMU went into receivership, those are claims that all relate to acts or omissions on the part of the bank, WAMU, pre-receivership. And that's your firea exhaustion. And therefore squarely within the ambit of firea exhaustion. Excuse me. And that's just a piling up. I mean, you know, if this is all barred somehow by whatever, by Roker Feldman and other stating of claims, why is this important? Yeah. That's a good question, Judge Wood. And this is why it's important. Ms. Riley is an individual. She no longer works for Washington Mutual. She hasn't worked for Washington Mutual for years. Right. It was seized September of 2008. Problem is this deposition transcript was disseminated on the internet in violation of a protective order and has gone viral on the internet on these foreclosure defense blogs. People pluck, as Mr. And all of a sudden she's subject, she's hounded by process servers literally on a weekly basis. I describe this in my declaration in the record at docket 79 in support of our motion at docket 75. And so literally if she had to respond to these subpoenas for her trial testimony and deposition testimony, she would be conscripted into service as a full-time unpaid witness. She hasn't had to sit for a single deposition or give trial testimony since this deposition was leaked in January of 2013. So that's why it's important. It's important to have precedent that will cut this out, this theory at the knees because it really does impact my client. Your Honor. Okay. Thank you. All right. Thank you very much. Anything further? Mr. Schulte. Yes. Your Honor. Your Honor, excuse me. What the appellate's counsel has brought up. What are you looking for? I don't understand. We are looking for. You owe the money to someone. What you're trying to do, you're suing every person to whom you might owe the money. And then the court will decide, you know, who you owe. This is common. You know, someone has a debt, not sure who it's to and looks for judicial guidance on that. Is that what you're trying to do? I mean, you admit the client owes the money, right? But we're trying to determine who he owes the money to. Right. Okay. So why not just name the defendants and you have the court decide whom he owes the money to. Is that what you want? No. Pardon? No, Judge Posner. Well, but that's what you are entitled to. Make sure you pay the money to the right person. I don't know what that has to do with fraud, but why aren't you just trying to get the court to decide who your creditor is? It very well may be the people we've already sued. However,  judgment, we can come after you in federal court. And it's that simple. You're not responding to my question. Your concern is you're not sure or you pretend not to be sure whom you owe the money to. Right. So in a situation like that, you name all as the defendants and you ask the court to figure out who is entitled to this money.  why aren't you proceeding that way? We wouldn't know all the possible defendants to name. If our allegations are true, there could be with the way mortgage and the MERS system works, these could have been sold off in different type of mortgage bundles that we may be paying the wrong people. We would basically have to name every lender in the United States. It seems so speculative to me. I mean, you have a state court judgment. There are only a few, I mean, it was Chase and Citibank and the defunct WAMU. And that history is pretty clear of who picked up their portfolio. So I, I mean, you know, all sorts of speculative things could happen. And your honor, I believe you're right. And I think that's why this is not properly dismissed on a motion to dismiss, but should be reserved again for a motion for summary judgment. Why is that consistent with Twombly and Iqbal? With, excuse me, with, with federal pleading standards, you've got to plead a claim that's at least barely plausible. Actually, it says plausible. It doesn't even say barely plausible. If it gets too speculative, claims get dismissed every day on that basis. Understood your honor. But the, the statements that Mr. Weiss had brought up, we haven't had a chance to even depose Ms. Riley ourselves. Your position is really untenable because what you're saying is since we know the banking industry is crooked, we never know which bank we really owe money to, right? A mortgage from a bank, but maybe it's sold a mortgage or it's in some crooked relationship with some other financial entity, right? So you never pay a mortgage back. That's your theory. Never have to pay a mortgage because you can't be sure that the credit, that's not exactly what we're saying. Judge Posner, what we're saying is due to the lights of facts that we believe we found on the, the internet, like the transcript that they talked about being leaked had not been for that transcript being leaked. We wouldn't even know about these things. So with that, we would ask that this court grant our appellant brief, nothing. All right. The case will be taken under advisement.